UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

**WorldQuant, LLC**                                    ____ Civ. ___ (      )
                    Plaintiff,

                        - against -                    **Complaint**

**Matthew Ober**
                    Defendant.


-----------------------------------------------------------------x

Plaintiff, WorldQuant, LLC ("WorldQuant" or the "Company"), by and through its undersigned counsel, Pullman & Comley, LLC, upon knowledge with respect to its own actions and on information and belief as to the other matters, for its complaint avers as follows:

### Nature of the Action

1.      WorldQuant brings this action to prevent Defendant Matthew Ober ("Ober"), one of WorldQuant's most valued employees who is in possession of significant and highly-confidential WorldQuant trade secrets and know-how, as well as highly sensitive information regarding business strategy and long-term opportunities, from breaching certain restrictive covenants with, and confidentiality obligations to, WorldQuant by commencing employment with Third Point LLC ("Third Point"), a competitor of WorldQuant.

### Parties

2.      WorldQuant is a limited liability company organized under the laws of the State of Delaware with its principal place of business located in Old Greenwich, Connecticut.

3.      Upon information and belief, Ober is an individual who resides at 435 W 23rd Street, Apartment 11A, New York, New York 10011.

**Jurisdiction and Venue**

4.      This is an action for breach of contract and misappropriation of trade secrets under New York common law and the Defend Trade Secrets Act, 18 U.S.C. § 1831, *et seq*.

5.      This Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1331 and 1367.

6.      This Court has personal jurisdiction over Ober because Ober resides in this district.  In addition, Ober agreed to personal jurisdiction in this district.

7.      Pursuant to 28 U.S.C. § 1391, venue properly lies in this Court because WorldQuant has a place of business situated within this judicial district, Ober resides within this judicial district, and the parties agreed by contract to submit to the exclusive jurisdiction of and venue in the federal and state courts of the State of New York for the resolution of all disputes arising under, or relating to, that contract.

**Relevant Facts**

**WorldQuant**

8.      WorldQuant is an international, private, institutional investment management firm consisting of a team of researchers, traders and technologists who engage in the quantification and automation of investment processes to buy and sell securities.

9.      WorldQuant employs quantitative or statistical arbitrage strategies across asset classes.  Quantitative or statistical arbitrage is a computational approach to buying and selling financial instruments utilizing automated systems which make use of data mining, statistical methods and artificial intelligence techniques.

10.     To accomplish this, WorldQuant collects an enormous amount of data from many sources, financial and otherwise, and then its highly trained and expert staff use innovative

technology to develop and use proprietary investment processes to deploy systematic model-based investment strategies on a global basis to determine which financial instruments to buy and sell. Its customized investment processes produce Alphas (a combination of mathematical expressions, computer source code, and configuration parameters that can be used in combination with historical data) to direct WorldQuant's investment strategy.

11.     WorldQuant's proprietary infrastructure allows it to leverage large numbers of diverse datasets, sourced from traditional and nontraditional vendors, to create statistical models to profitably buy and sell financial instruments. The ability to leverage such a large number of datasets and identify nontraditional sources of data are key proprietary elements for the Company to profitably navigate the financial markets.

12.     WorldQuant's researchers focus on developing a database of production Alphas using various datasets from which to derive predictive signals. These datasets come from the Company's investigation of numerous sources, but the real task is deciding which of the scores of available datasets will be most valuable for developing the most profitable predictive models or Alphas. The output of this research is provided to WorldQuant's product portfolio managers who combine Alphas from the Alpha database into strategies that create target portfolios.

13.     A key tenet of statistical arbitrage investing is that there are market inefficiencies which may be capitalized on by identifying their associated statistically-based predictive signals, and developing trading strategies in response. Naturally, the global market for statistical arbitrage investing, while inherently dynamic, is for any given period of time, finite. Profits may be reaped only to the extent which market inefficiencies over the given period exist. Therefore, any entity which engages in the same or similar investment activity and/or which buys and sells the same financial  instruments will be in direct competition with WorldQuant.

14.     Like most investment management firms, WorldQuant relies upon trade secrets and other confidential, proprietary information for much of its business, and each year WorldQuant spends enormous sums of money and dedicates extensive man-power to determine which financial instruments to buy and sell.

**Ober's Career at WorldQuant**

15.     Ober was a highly trusted employee of WorldQuant.

16.     Ober joined WorldQuant on May 27, 2011, as a Data Product Analyst, was promoted to Co-Head of Data Strategy, and was responsible for overseeing a team of skilled employees responsible for data analysis and procurement.

17.     Ober's most recent base salary was $200,000.00.

18.     Over the course of his tenure with WorldQuant, Ober acquired extensive experience in the field of quantitative investment strategies.

19.     Ober is familiar with, and had access to, highly confidential proprietary WorldQuant information pertaining to, among other things, the following:

    a.     How WorldQuant onboards, consumes and processes data for use in its quantamental investment strategies;

    b.     Which of WorldQuant's datasets are most profitable and which datasets are not profitable;

    c.     The costs of purchasing datasets;

    d.     The value of WorldQuant's proprietary and confidential Alphas; and

    e.     WorldQuant's confidential, proprietary plans to further expand its business using datasets in a strategic way.

20.     In addition, Ober is familiar with, and had access to, highly confidential information pertaining to WorldQuant's interaction with its vendors.  Ober's knowledge of WorldQuant's interaction with its vendors is unique, and includes the following:

a.      What information WorldQuant buys from such vendors;

b.      Which vendors have the most promising information for data consumption; and

c.      What information the vendors offer for sale but do not actively promote.

21.    The confidential information Ober was privy to is directly attributable to his employment at WorldQuant and represents the product of WorldQuant's substantial investment in research and innovation and is critical to WorldQuant's competitive success.   Such information is carefully guarded and is not made accessible to the public or to WorldQuant's competitors, and could not be easily replicated from public sources.

**Ober's Employment Agreement**

22.    Ober and WorldQuant entered into an employment agreement dated May 27, 2011, which was amended by letter dated September 28, 2016 ("Employment Agreement").

23.    The Employment Agreement contains a post-employment covenant prohibiting Ober from working for a WorldQuant competitor for a period of twelve months, in exchange for which WorldQuant promised to pay Ober his salary for the entire duration ("Noncompetition Covenant") and a confidentiality provision that prevents Ober from making use of, divulging or disclosing WorldQuant's proprietary and confidential information or Trade Secrets to any third party ("Nondisclosure Covenant").

24.    With respect to the Noncompetition Covenant, Ober specifically agreed that:

> [WorldQuant] may, at its option, continue your salary during the Restrictive Period (as defined below), less any amounts you may earn from other employment permitted hereunder ("Salary Continuation"), and if the Company so elects to continue your salary, then you will be precluded during such Restricted Period from (i) engaging in a Competitive Activity (as defined below) or (ii) accepting or performing services of any kind directly or indirectly (including as an employee, director, officer, principal, member, shareholder, partner, consultant, or independent contractor) with or for a Competitor (as defined below) in an

employment position,  or rendering consulting services to a Competitor (as defined below) relating to such subjects.

25.     The "Restricted Period" is defined as "a period lasting up to twelve (12) months following the termination of [] employment."

26.     The term "Competitive Activity" is narrowly defined as "setting up infrastructure and systems capable of use by a Competitor, and/or working for or consulting with a firm or individual(s) intended to establish a business that will be a Competitor."

27.     The term "Competitor" includes, in relevant part, "any entity worldwide that (i) engages in or employs, intends to engage in or employ or is preparing to engage in or employ Quantitative Trading or Investment Strategies."

28.     "Quantitative Trading or Investment Strategies" are "strategies or techniques which make trading and/or investing decisions primarily  based upon computer-driven processes, and which are commonly categorized, known and/or referred to in the financial services industry as, among other things, 'statistical arbitrage', 'systematic trading', 'algorithmic trading', 'algo trading', 'computer-driven trading', 'technical trading', 'artificial intelligence-based trading', 'automated trading', 'black box trading', and/or 'high frequency trading.'"  Finally, the provision adds that "[f]or the avoidance of doubt, a business or person that uses quantitative models to trade shall be considered a Competitor irrespective of the products traded by such business or person."

29.     Ober also agreed to a Nondisclosure Covenant, as follows:

Upon execution of [the Agreement] and solely by reason of your employment by the Company, you may come into possession of, have knowledge of or contribute to [] Confidential Information.

All of the Confidential Information is a valuable asset of the Company and is, will be, and shall at all times, including subsequent to your employment, remain, the sole and exclusive property of the Company.

You shall, at all times, hold the Confidential Information as secret.

During the term of your employment by the Company and following termination thereof for any reason, you shall not, directly or indirectly, individually or in combination or association with any person or entity, make use of, divulge or disclose to any third party any of the Confidential Information without, in each instance, the prior written consent of the Company.

30.    The term "Confidential Information" is defined as

all information or material not generally known to the public or the industry in which the Company is or may be engaged which is owned by the Company or in which the Company has an interest, including but not limited to all work product; techniques; plans; designs; programs; customer information; identity and job descriptions of Company personnel; the Company's organizational structure; commission rates; financing relationships or terms; service provider or vendor relationships or terms; investment performance or results (including any "track record" information); financial data; trading strategies including without limitation regions, instruments or styles; databases; database criteria; trading algorithms; processes; methodologies; compensation or bonus data; the terms of this employment agreement; or other information not in the public domain pertaining to the business or affairs of the Company or of any of its affiliates. Information shall not be considered to be in the public domain if revealed or disclosed in contravention of this agreement or the agreements made between the Company and other parties.

31.    Finally, Ober expressly acknowledged that:

…it may be impossible to measure monetarily the damages that the Company will incur if you should breach or be in default of any of your representations or agreements set forth in the Agreement. Accordingly, if you breach or are in default of any of the representations and agreements set forth in the Agreement, the Company shall be entitled to injunctive relief (without posting any bond or security). If any action or proceeding is instituted on behalf of the Company to enforce the terms of the restrictive covenants in the Agreement, you hereby waive any claim or defense thereto that the Company has an adequate remedy at law or that the Company has not been, or is not being, irreparably injured by your breach or default.

**Ober's Decision to Join WorldQuant's Direct Competitor**

32.     Ober tendered his resignation on November 7, 2016, and informed WorldQuant that he had accepted a position with Third Point LLC ("Third Point").

33.     On information and belief, Ober will be Third Point's Chief Data Scientist and will be paid in excess of $2,000,000.00.

34.     Third Point is a multi-billion dollar financial market participant that buys and sells financial equities and is a direct competitor to WorldQuant.

35.     On information and belief, Third Point is actively expanding its use of data analytics tools to support its investment strategy and is actively seeking to expand the quantification of its trading processes.

36.     On information and belief, Third Point is actively hiring individuals, such as Ober, who are capable of using data analytics tools and who can help expand the quantification of Third Point's trading processes in order to guide Third Point's investment opportunities.

37.     On information and belief, if Third Point is able to use WorldQuant's unique quantitative strategy gleaned from Ober, the application of that quantitative strategy will result in Third Point purchasing or selling its positions in the same companies in which WorldQuant trades.  That action will affect the price at which WorldQuant can purchase or sell that same security, thus having a profoundly negative affect on the profitability of WorldQuant's trades.

**WorldQuant's Efforts to Persuade Ober to Comply with His Contractual Obligations**

38.     By letter dated November 8, 2016, WorldQuant reminded Ober of the terms of his Employment Agreement and informed Ober that it considered his joining Third Point to be a breach of the covenants contained within that Agreement.

39.     Pursuant to the terms of the Employment Agreement, WorldQuant offered to and intends to pay Ober his salary of $200,000.00 for the 12 months during which he cannot work at

Third Point so long as he complies with the noncompetition and nondisclosure covenants contained therein.

40.     Despite WorldQuant's best efforts to persuade Ober to comply with his contractual obligations, Ober indicated that he would proceed with his plan to join Third Point.

41.     On information and belief, Ober is expected to begin his employment with Third Point in early 2017.

### COUNT ONE – Breach of Contract

1.     Paragraphs 1 through 41 of this Complaint are incorporated herein as Paragraphs 1 through 41 of this Count One as if fully set forth herein.

42.     The Employment Agreement between Ober and WorldQuant contains Noncompetition and Nondisclosure Covenants that are enforceable.

43.     The Noncompetition and Nondisclosure Covenants impose upon Ober certain contractual obligations.

44.     By the acts described above, Ober breached the Noncompetition and Nondisclosure Covenants of his Employment Agreement.

45.     If Ober is not enjoined from working for Third Point, thereby violating his Noncompetition Covenant, WorldQuant will be irreparably harmed.

46.     If Ober is not enjoined from violating the Noncompetition and Nondisclosure Covenants, WorldQuant will be irreparably harmed.

### COUNT TWO –Misappropriation of Trade Secrets under New York Common Law

1.     Paragraphs 1 through 41 of this Complaint are incorporated herein as Paragraphs 1 through 41 of this Count Two as if fully set forth herein.

47.     WorldQuant possesses certain trade secrets and confidential information with which Ober is familiar and which Ober has a common law duty not to disclose outside of WorldQuant.

48.     The Employment Agreement between Ober and WorldQuant also imposes upon Ober a Nondisclosure Covenant with respect to WorldQuant's trade secrets and otherwise confidential information.

49.     Ober, as long as he is employed by Third Point, will use and/or disclose WorldQuant's trade secrets for his own benefit and for the benefit of Third Point.

50.     Ober, as long as he is employed by Third Point, will inevitably use and/or disclose WorldQuant's trade secrets for his own benefit and for the benefit of Third Point.

51.     Ober's disclosure and use of such information constitutes a misappropriation of WorldQuant's trade secrets in violation of New York common law.

52.     As an unavoidable result of Ober's misappropriation of WorldQuant's trade secrets, WorldQuant will be irreparably harmed.

**COUNT THREE – Defend Trade Secrets Act, 18 U.S.C. § 1831, *et seq.***

1.      Paragraphs 1 through 41 of this Complaint are incorporated herein as Paragraphs 1 through 41 of this Count Three as if fully set forth herein.

53.     WorldQuant is an investment management firm that trades financial instruments in interstate commerce.

54.     WorldQuant possesses and uses certain trade secrets and otherwise confidential information to trade these financial instruments.

55.     WorldQuant derives economic benefits from the use of these trade secrets and otherwise confidential information.

56.     Ober, as long as he is employed by Third Point, will use and/or disclose WorldQuant's trade secrets for his own benefit and for the benefit of Third Point.

57.     Ober, as long as he is employed by Third Point, will inevitably use and/or disclose WorldQuant's trade secrets for his own benefit and for the benefit of Third Point.

58.     WorldQuant has not expressly nor impliedly consented to Ober's use or disclosure of its trade secrets or otherwise confidential information.

59.     As an unavoidable result of Ober's misappropriation of WorldQuant's trade secrets, WorldQuant will be irreparably harmed.

60.     Ober's disclosure and use of such information constitutes a misappropriation of WorldQuant's trade secrets in violation of the U.S. Defend Trade Secrets Act, 18 U.S.C. § 1831, *et seq.*

## COUNT FOUR – Temporary Restraining Order

1-60.    Paragraphs 1 through 60 of Count Three of this Complaint are incorporated herein and made Paragraphs 1 through 60 of this Count Four as if fully set forth herein.

61.     As set forth above, WorldQuant has demonstrated that it is entitled to a temporary restraining order enjoining Ober from violating the terms of the Noncompetition and Nondisclosure Covenants because (A) breach thereof will cause WorldQuant irreparable harm; (B) disclosure of WorldQuant's Trade Secrets will cause WorldQuant irreparable harm; and (C) WorldQuant is likely to prevail on the merits of its claims for specific performance and misappropriation of its Trade Secrets under state and federal law.

62.     The balance of the equities favors granting a temporary restraining order in favor of WorldQuant.

63.     WorldQuant has no adequate remedy at law.

## COUNT FIVE – Preliminary Injunction

1-60.    Paragraphs 1 through 60 of Count Three of this Complaint are incorporated herein and made Paragraphs 1 through 60 of this Count Five as if fully set forth herein.

61.    As set forth above, WorldQuant has demonstrated that it is entitled to a preliminary injunction enjoining Ober from violating the terms of the Noncompetition and Nondisclosure Covenants because (A) breach thereof will cause WorldQuant irreparable harm; (B) disclosure of WorldQuant's Trade Secrets will cause WorldQuant irreparable harm; and (C) WorldQuant is likely to prevail on the merits of its claims for specific performance and misappropriation of its Trade Secrets under state and federal law.

62.    The balance of the equities favors granting a preliminary injunction in favor of WorldQuant.

63.    WorldQuant has no adequate remedy at law.

## COUNT SIX – Permanent Injunction

1-60.    Paragraphs 1 through 60 of Count Three of this Complaint are incorporated herein and made Paragraphs 1 through 60 of this Count Six as if fully set forth herein.

61.    As set forth above, WorldQuant has demonstrated that it is entitled to a permanent injunction enjoining Ober from violating the terms of the Noncompetition and Nondisclosure Covenants because (A) breach thereof will cause WorldQuant irreparable harm; (B) disclosure of WorldQuant's Trade Secrets will cause WorldQuant irreparable harm; and (C) WorldQuant is likely to prevail on the merits of its claims for specific performance and misappropriation of its Trade Secrets under state and federal law.

62.    The balance of the equities favors granting a permanent injunction in favor of WorldQuant.

63.      WorldQuant has no adequate remedy at law.


**WHEREFORE**, the Plaintiff hereby requests the following relief:

1.      That this Court enter an order temporarily restraining Ober from commencing employment with Third Point.

2.      That this Court enter an order preliminarily enjoining Ober from: (a) breaching the terms of the Noncompetition and Nondisclosure Covenants with WorldQuant; and (b) engaging in any employment arrangement with Third Point in violation of WorldQuant's rights under the Noncompetition and Nondisclosure Covenants.

3.      That this Court enter an order permanently enjoining Ober from: (a) breaching the terms of the Noncompetition and Nondisclosure Covenants with WorldQuant; and (b) engaging in any employment arrangement with Third Point in violation of WorldQuant's rights under the Noncompetition and Nondisclosure Covenants.

4.      That   this Court enter an order temporarily enjoining Ober from using WorldQuant, LLC's Trade Secret information;

5.      That this Court enter an order preliminarily enjoining Ober from using WorldQuant, LLC's Trade Secret information;

6.      That this Court enter an order permanently enjoining Ober from using WorldQuant, LLC's Trade Secret information;

7.      Money damages;

8.      Punitive damages;

9.      Attorneys' fees;

10.     Costs; and

11.     Such further relief in law or equity as the Court deems just and proper.

Dated:  December 1, 2016

WorldQuant, LLC
By its attorneys,

*/s/ James T. Shearin*
James T. Shearin (SDNY no. js9365)
Joshua A. Hawks-Ladds
Martha M. Royston
Pullman & Comley, LLC
90 State House Square
Hartford, CT  06103-3702
Telephone  860 424 4300
Facsimile 860 424 4370